# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| MISSOURI STATE EMPLOYEES' RETIREMENT SYSTEM, ) ) ) | |
| Plaintiff , ) ) | |
| v. ) ) | Case No. 09-4224-CV-C-NKL |
| CREDIT SUISSE, NEW YORK BRANCH, ) f/k/a CREDIT SUISSE FIRST BOSTON, ) NEW YORK BRANCH, and CREDIT ) SUISSE ASSET MANAGEMENT, LLC, ) ) | |
| Defendants. ) | |

## ORDER

Plaintiff Missouri State Employees' Retirement System (MOSERS) filed this action against Defendants Credit Suisse, New York Branch and Credit Suisse Asset Management, LLC (collectively, "Defendants"), in the Circuit Court of Cole County, Missouri. MOSERS asserts claims against Defendants in connection with its investing and holding certain MOSERS assets. Defendants filed a timely Notice of Removal, stating that jurisdiction is based only on diversity of citizenship. Before the Court is MOSERS's motion to remand [Doc. # 9]. For the following reasons, the Court grants the motion.

**I.   Background**[1]

---

[1] The parties do not dispute the facts relevant to a determination of MOSERS's motion.

According to MOSERS's state court Petition, it is a pension plan for current and former Missouri state employees. *See generally* Mo. Rev. Stat. §§ 104.010 and 104.320 - 104.800. MOSERS was established by Missouri statute for the purpose of administering and paying retirement and other benefits to those employees and their beneficiaries. *See* Mo. Rev. Stat. § 104.320. It generally covers all full-time Missouri state employees, including high level state officials.

Missouri statutes define MOSERS's existence. Those statutes define MOSERS as an "instrumentality" of the state. *See* Mo. Rev. Stat. §§ 104.460, 104.530. It is a "body corporate." Mo. Rev. Stat. § 104.020. It may sue and be sued in its own name. Mo. Rev. Stat. § 104.530. MOSERS may hold property in its own name. Mo. Rev. Stat. § 104.440.1. It may enter contracts on its own behalf. *Id.*

MOSERS is funded in part from Missouri's state budget, as well as from investment income. *See* Mo. Rev. Stat. §§ 104.436, 104.1066. MOSERS's employees are considered state employees. Mo. Rev. Stat. § 104.460. MOSERS must give preference to Missouri-based consulting companies for certain services if available. Mo. Rev. Stat. § 104.550. MOSERS's principal office must be located in Missouri's capital, Jefferson City. Mo. Rev. Stat. § 104.480. MOSERS is authorized to be represented by Missouri's attorney general. Mo. Rev. Stat. § 104.520.

The majority of MOSERS's board is comprised of state officials. MOSERS's board includes "the state treasurer, the commissioner of administration, two members of the senate appointed by the president pro tem of the senate, two members of the house of

representatives appointed by the speaker of the house, [and] two members appointed by the governor." Mo. Rev. Stat. §§ 104.450, 104.470. The board has responsibility for "general administration of, and responsibility for, the proper operation of the system"; with limited exception, the board has "exclusive jurisdiction and control over the funds and property of the system." Mo. Rev. Stat. § 104.500.

MOSERS has financial reporting duties to state government. MOSERS must report to Missouri's Governor about its financial condition. Mo. Rev. Stat. § 104.480. Missouri's state auditor must review MOSERS's annual audits and report findings to the Governor. *Id.*

MOSERS seeks recovery for Defendants' alleged breach of contract, breach of fiduciary duty, negligence, fraudulent and negligent misrepresentations, and breach of covenant of good faith and fair dealing. MOSERS argues that the Court must remand this action because it lacks jurisdiction.

**II.     Discussion**

More specifically, MOSERS argues that it is not a "citizen" of Missouri; thus, it says the Court is without power to exercise diversity jurisdiction over this removed action. Of course, federal courts are courts of limited jurisdiction, and must operate under the presumption against federal jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). *See also Gray v. City of Valley Park, Mo.*, 567 F.3d 976 (8th Cir. 2009). "The burden of establishing that a cause of action lies within the limited jurisdiction of the federal courts is on the party asserting jurisdiction" – here, Defendants . *See Arkansas Blue Cross & Blue Shield v. Little Rock Cardiology Clinic, P.A.*, 551. F.3d

812, 816 (8th Cir. 2009). In reviewing a motion to remand, the Court must resolve all doubts about federal jurisdiction in favor of remand. *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997).

MOSERS explains that it may not be considered a citizen of Missouri subject to diversity jurisdiction because it is an "arm of the state." States have no "citizenship for purposes of establishing diversity." *Alternate Fuels, Inc. v. Cabanas*, 435 F.3d 855 (8th Cir. 2006). Where political subdivisions are simply "arms" or "alter egoes" of the state, they are not citizens of that state for purposes of determining diversity. *Moor v. County of Alameda*, 411 U.S. 693, 717 (1973), *overruled on other grounds*, *Monell v. Department. of Social Servs of City of New York*, 436 U.S. 658 (1978). Whether state-created entities are arms of the state is a question of federal law that turns on analysis of state law defining those entities. *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 n.5 (1997); *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280-81 (1978). *Moor* directs courts to consider whether the entity in question:

> (1) is incorporated or has corporate powers;
> (2) may sue or be sued in its corporate capacity;
> (3) is liable for judgments against it and, to pay such judgments (or otherwise fund its operations), is authorized to raise funds (e.g., by levying taxes or issuing bonds) independent of or not appropriated from the State treasury;
> (4) may sell, hold, or otherwise deal in property;
> (5) may enter contracts in its own name;
> (6) may perform traditional and essential government functions (e.g., provision of water service, flood control, rubbish disposal, etc.);
> (7) exercises autonomy over internal operations (e.g., by, in the case of a county, generating revenue to provide a variety of public services); and
> (8) has been determined to have independent corporate character by the state's Supreme Court (or presumably other court) decisions.

*See Moor*, 411 U.S. at 717-21.

The question of whether an entity is an arm of the state for diversity purposes is related, but not determinative, of whether it is an arm of the state under Eleventh Amendment considerations. MOSERS emphasizes that it is not arguing that it is entitled to Eleventh Amendment immunity: it argues that Eleventh Amendment analysis does not apply to analysis of whether it is an arm of the state for diversity purposes. But analysis of Eleventh Amendment and its presupposed notion of sovereign immunity does parallel arm of the state diversity analysis. *See Seminole Tribe of Fl. v. Florida*, 517 U.S. 44, 54 (1996) ("Although the text of the Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts ....")*; Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984) (noting that, in state law cases, "[a] State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued") (emphasis in original); *Fresenius Med. Care Cardio. Resources, Inc. v. Puerto Rico & the Carribean Cardio. Center Corp.*, 322 F.3d 56, 65 (1st Cir. 2003) ("The Eleventh Amendment has always acted to restrict the jurisdiction of the federal courts to entertain claims against the state when the underlying source of federal jurisdiction is diversity jurisdiction."); *Nelson v. LaCrosse County Dist. Atty. (State of Wisc.)*, 301 F.3d 820, 827 (7th Cir. 2002) (acknowledging that Eleventh Amendment immunity applies in both diversity and federal question cases). The United States Court of Appeals for the Eighth Circuit has indicated that arm-of-the-state diversity and Eleventh Amendment analyses are congruent. *See Gilliam v. City of Omaha*, 524 F.2d 1013 (8th Cir. 1975) (citing *Moor*'s

discussion of the factors relevant to an entity's diversity citizenship when considering whether the City of Omaha was entitled to Eleventh Amendment immunity). *See also Vogt v. Board of Comm'rs of Orleans Levee Dist.*, 294 F. 3d 684, 689 n.2 (5th Cir. 2002) (applying Eleventh Amendment factors in analyzing the diversity citizenship of a state agency); *Blake v. Kline*, 612 F.2d 718, 726 (3d Cir. 1979) ("the question of diversity jurisdiction [in a suit against a state public school retirement system] parallels the eleventh amendment question; whether [the system] is the Alter ego of the state").[2] As the *Blake* court noted:

> It is surprising, however, given the divergent principles underlying the two inquiries, that the only distinction between them to have received judicial recognition to date is that the state may waive its eleventh amendment sovereign immunity but is unable to waive the lack of subject matter jurisdiction if diversity does not exist in a given suit.

*Blake*, 612 F.2d at 726 n.16 (citation omitted). Thus, though the same considerations come into play in Eleventh Amendment and diversity arm-of-the-state analyses, an entity cannot waive an arm-of-the-state objection to diversity jurisdiction.

---

[2] The Eighth Circuit has named Eleventh Amendment factors virtually identical to those set out in *Moor*:
> 1) local law and decisions defining the status and nature of the agency involved in its relation to the sovereign; (2) most importantly, whether the payment of the judgment will have to be made out of the state treasury; (3) whether the agency has the funds or the power to satisfy the judgment; (4) whether the agency is performing a governmental or proprietary function; (5) whether it has been separately incorporated; (6) the degree of autonomy over its operations; (7) whether it has the power to sue and be sued and to enter into contracts; (8) whether its property is immune from state taxation; and (9) whether the sovereign has immunized itself from responsibility for the agency's operations.

*Sherman v. Curators of the Univ. of Mo.*, 16 F.3d 860, 863 n. 6 (8th Cir. 1994) (citation omitted).

6

In Eleventh Amendment cases, the Supreme Court of the United States has emphasized that whether a judgment would be paid out of the state's treasury as the most significant factor in Eleventh Amendment analysis. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-50 (1994) (finding that Louisiana waived Eleventh Amendment immunity by suing private parties in a class action lawsuit). The "proper inquiry is not whether the state treasury would be liable in *this* case, but whether, hypothetically speaking, the state treasury would be subject to 'potential legal liability' *if* the retirement system did not have the money to cover the judgment." *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005) (emphasis in original) (citation omitted). Where alleged arms of a state are plaintiffs, to the extent the issue is relevant courts have looked to "whether a money judgment for [the system] would benefit the [state treasury]." *California Public Employees Retirement System v. Moody's Corp.*, Nos. C 09-03628, C 09-03629, 2009 WL 3809816, at *3 (N.D. Cal. Nov. 10, 2009).

A number of courts have directly considered whether other states' employee retirement systems are arms of state and have all but unanimously found that they are. In *Ernst v. Rising*, 427 F.3d 351, 360-61 (6th Cir. 2005), the court found that Michigan's retirement system for state-court judges and high level state officials was an arm of the state where: the state treasurer had custody of and invested the system's funds; the state legislature annually appropriated moneys needed to fund the system as a "contractual obligation" to each retiree; the state department of management and budget created the board and was responsible for management of the system; the majority of the system's

7

board was appointed by the governor and the other members were the state treasurer and attorney general; board members were compensated by the state legislature; and the Michigan Supreme Court had described the system in related litigation as "maintained by the state." *Id.* at 366. In *McGinty v. New York*, 251 F.3d 84 (2d Cir. 2001), the court held that the New York Retirement System was an arm of the state where: the system was a body corporate; monies were provided by annual legislative appropriation as well as employer contributions and member contributions; the state's division of the treasury was entrusted with custody of funds; the state's comptroller served as administrative head and trustee and the state attorney general served as legal advisor; and the system reported to state superintendent of insurance who could require annual report filings and set standards. *Id.* at 97-100. In *Fitzpatrick v. Bitzer*, 519 F.2d 559, 561, 565 (2d Cir. 1975), the Connecticut State Employees' Retirement System was determined to be an arm of the state where: the system was unincorporated; the system could not sue in its own name; any judgment would be paid only from a segregated retirement fund but the state was required to appropriate funds for the system such that a judgment against the fund would increase the state treasury's obligation the following year. *Id.* at 561, 565, *rev'd in part on other grounds*, 427 U.S. 445 (1976). *JMB Group Trust IV v. Pennsylvania Mun. Ret. Sys.*, 986 F. Supp. 534 (N.D. Ill. 1997), found the Pennsylvania Municipal Retirement System an arm of the state where: it could sue in its own name, its board consisted of state officials and individuals appointed by the governor, its funds were in the custody of the commonwealth treasurer, it was audited by and reported to the commonwealth general

assembly annually, and its moneys were exempt from state tax. *Id.* at 538. *See also Sculthorpe v. Virginia Ret. Sys.*, 952 F. Supp. 307, 309-10 (E.D. Va. 1997) (finding the Virginia Retirement System an arm of the state where it was a body corporate, and operating a retirement system for teachers, state employees, and employees of political subdivisions); *Hair v. Tennessee Consol. Ret. Sys.*, 790 F. Supp. 1358, 1364 (M.D. Tenn. 1992) (considering the Tennessee Consolidated Retirement System and finding that the plaintiff had not met its burden of establishing jurisdiction in light of evidence indicating a judgment against that system would come out of state funds); *Mello v. Woodhouse*, 755 F. Supp. 923, 930 (D. Nev. 1991) (finding the unincorporated Nevada Public Employees' Retirement Board, which could not sue in its own name, to be an arm of the state); *Retired Pub. Employees' Ass'n of Cal., Chapter 22 v. California*, 614 F. Supp. 571, 581 (N.D. Cal. 1984) (finding that the Eleventh Amendment barred claims against the Public Employees Retirement System of the State of California as an alter ego of the state), *rev'd on other grounds*, 799 F.2d 511 (1986); *United States v. South Carolina*, 445 F. Supp. 1094, 1099-1100 (D.S.C. 1977) (finding the South Carolina State Retirement System functioned as an alter ego of the state); *21 Properties, Inc. v. Romney*, 360 F.Supp. 1322, 1325-26 (N.D. Tex. 1973).

The latest case to find a state retirement system an arm of the state is *California Public Employees Retirement System v. Moody's Corp.*, Nos. C 09-03628, C 09-03629, 2009 WL 3809816 (N.D. Cal. Nov. 10, 2009). There, as here, the California Public Employees Retirement System was a plaintiff removed to federal court based on alleged

diversity. *Id.* at *1. The system could sue or be sued. Its expenses were paid from interest income of the retirement fund. The state had a statutory obligation to contribute to that fund to provide for vested benefits and to make up any shortfall. The system could sell, hold and deal in property. Contributions were appropriated from general state funds. Its funds were restricted to being used by the system for its beneficiaries. *Id.* at *3. The system served state employees and other agencies including local school districts, which the court found did not render it separate. *Id.* at *4. An amendment of the state constitution gave sole management of public pension funds to their boards and strictly limited the legislature's power over them; but that power was limited – e.g., the state had the power to reduce or eliminate unvested benefits and to prohibit certain investments. *Id.* at *4-5. Resolving all doubts in favor of remand, the *Moody's* court found that the system was an arm of California, rather than a citizen of it. *Id.*

Defendants cite one decision in which a state retirement system was found not to be an arm of the state; that decision was abrogated by another court which subsequently considered the same controversy after the relevant state supreme court offered guidance. *Compare Boatmen's First Nat'l Bank v. Kansas Public Employees Ret. Sys.*, 915 F. Supp. 131, 140 (W.D. Mo. 1996), implied overruling recognized by *Ernst v. Rising*, 427 F.3d 351 (6th Cir. 2005), *with Kansas Public Employees Ret. Sys. v. Boatmen's First Nat'l Bank of Kansas City*, 982 F. Supp. 806, 808 (D. Kan. 1997). The Court has located two other, older, cases finding that a state retirement system was not an arm of the state. *See Almond v. Boyles*, 612 F. Supp. 223, (D.N.C. 1985) (holding that the North Carolina

Teachers' and State Employees' Retirement System was not an arm of the state, despite detailed processes where the state controlled the system in the appointment of its board and regulations, where: the system was incorporated; could sue and be sued; could acquire and dispose of property; a substantial portion of the system's money was not appropriated by the legislature but contributed by employees, employers, and investment income; and the system's funds were isolated), *aff'd in relevant part*, 792 F.2d 451, 456 (4th Cir. 1986); *Bowen v. Hackett*, 387 F. Supp. 1212 (D.R.I. 1975) (finding that a state unemployment and disability insurance fund was not entitled to Eleventh Amendment immunity where its revenues were segregated from state general revenues and the state had no legal duty to fund such programs, even though the state treasurer was custodian of the funds).

In a suit first filed in federal court, the *Boatmen's* court held that the Kansas Public Employees Retirement System was not the alter ego of Kansas and was, thus, protected by Eleventh Amendment immunity. *Boatmen's*, 915 F. Supp. at 137. The *Boatmen's* court was not considering a motion to remand. The *Boatmen's* court noted that the separately incorporated system had the power to sue and be sued and a limited power to enter contracts. *Id.* at 139. The *Boatmen's* court reasoned that the state was not liable for payment of judgments against the plan, although the state made contributions to the system as an employer; the system was funded exclusively from employer and employee contributions and investment income and benefits and expenses were paid from the system's funds. *Id.* at 137, 139. Further, the *Boatmen's* court determined that the system

served a proprietary, rather than governmental, interest, in that it functioned like a retirement in the private sector, making regular commercial investments and existing for the benefit of its participants. *Id.* at 138. The *Boatmen's* court was not persuaded by state controls on the system such as: auditing, the requirement that the system's offices be in the state capitol, the requirement that the attorney general render necessary legal services, limitations on investments, the majority of the board being appointed by state officials, and benefits being immune from state taxes. *Id.* at 139. The *Boatmen's* court found that the balance of factors weighed against a finding that the system was the alter ego of the state. *Id.*

Considering the same controversy in a different case – which was originally filed in state court but later removed – , the *Kansas Public Employees Reitrement System* ("*KPERS*") court found the opposite. *See* 982 F. Supp. at 808. Strictly construing the removal statute so as to resolve all doubts in favor of remand, the *KPERS* court found the balance weighed in favor of finding the system the alter ego of the state. *See id.* In addition to restating facts reported by the *Boatmen's* court, the *KPERS* court noted that the system was created not only to provide a public employee retirement system, but also to impact the economy and efficiency of governmental affairs. The *KPERS* court also commented that the system's trust fund was maintained in the state treasury. Significantly, the Kansas Supreme Court had recently (1) held that the investment function of the system was a governmental, rather than proprietary, function and (2) found that the system sought recovery of money that would otherwise be paid by the public in the form of higher taxes

12

where the state was contractually obligated to pay the benefits promised to its employees. *Id.* at 808-09. The *KPERS* court concluded that the system was not a citizen of the state for diversity purposes and remanded. *Id.* at 809. *See also Reiger v. Kansas Pub. Employees Ret. Sys.*, 755 F. Supp. 360 (D. Kan. 1990).

Applying the *Moor* test shows that MOSERS must be considered an arm of the state here. MOSERS is separately incorporated, may sue and be sued, may hold property, and may contract in its own name; those factors do weigh against finding it an arm of the state. To the extent the issue of who would pay a judgment is relevant in cases where alleged arms of the state are plaintiffs, where Missouri is statutorily obligated to contribute to MOSERS's budget for meeting its financial obligations, Missouri's budget may ultimately benefit from a judgment in MOSERS's favor. *See California Pub. Employees Ret. Sys.*, 2009 WL 3809816 at *3 (finding, where a state retirement system was a plaintiff, "the relevant question is whether a money judgment for [the system] would benefit the [state treasury]"). MOSERS's operations are closely tied to the state indicating that it does function as an "instrumentality" of the state: it must be located in the state capital; it has reporting and auditing obligations to the state; state lawyers may offer it legal counsel; and its employees are considered state employees. Though *Boatmen's* found that providing retirement benefits to public employees was not a governmental function, it appears to stand alone on that point; where MOSERS provides benefits directly to state employees, its function is governmental. *Compare Boatmen's*, 915 F. Supp. at 138 (deciding that it is a proprietary function akin to that performed by

private employers), *with Ernst*, 427 F.3d at 261, *McGinty*, 251 F. 3d at 97-98 (finding that providing benefits to government employees is a governmental function because it "assists in the business of the state by enabling the state to meet its pension and benefit obligations"), and *Sculthorpe*, 952 F. Supp. at 309-10. MOSERS's lack of autonomy from the state is signaled by the make up of its board: that board – which is responsible for its operations – is controlled by government officials. *See University of R.I. v. A.W. Chesterton Co.*, 2 F.3d 1200, 1205 (1st Cir. 1993) (noting that a publicly-created board with a majority of members who are appointed by the governor is "a legislative design most courts routinely view as evidence of an entity's lack of independence from state control"). Finally, no Missouri court has offered relevant guidance on whether MOSERS is an arm of the state for diversity purposes.

In the context of this motion for remand, the *Moor* factors point toward a ruling that it is. Construing the removal statute narrowly, MOSERS functions as an arm of the state whose suits are not subject to removal to federal court on the basis of diversity jurisdiction.[3]

---

[3] The parties also present arguments concerning whether MOSERS waived its subject matter jurisdiction arguments in contracting with Defendants. Subject matter jurisdiction cannot be waived. *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 837 (8th Cir. 2003). Because the Court finds that it has no subject matter jurisdiction, it does not reach those arguments.

## III. Conclusion

Accordingly, it is hereby ORDERED that MOSER's motion to remand [Doc. # 9] is GRANTED and the matter REMANDED to the Cole County court.

s/ Nanette K. Laughrey<br>NANETTE K. LAUGHREY<br>United States District Judge

Dated: January 21, 2010
Jefferson City, Missouri